Citation Nr: 1550128 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 09-15 189 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial rating for posttraumatic stress disorder (PTSD) in excess of 30 percent prior to June 24, 2009, and in excess of 50 percent thereafter.

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


ATTORNEY FOR THE BOARD

R. Casadei, Associate Counsel 



INTRODUCTION

The Veteran served on active duty from March 1966 to March 1968. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a March 2008 rating decision of the Winston-Salem, North Carolina Department of Veterans Affairs (VA) Regional Office (RO) that granted service connection for PTSD and assigned a 30 percent disability rating effective July 19, 2007. 

An April 2010 rating decision increased the Veteran's PTSD rating to 50 percent effective June 24, 2009. The Veteran has not expressed satisfaction with the increase, and the matter remains on appeal. AB v. Brown, 6 Vet. App. 35 (1993). 

The issue for an increased PTSD rating was previously remanded by the Board in August 2011 for further evidentiary development of requesting outstanding post-service VA treatment records and to obtain a VA examination for the Veteran PTSD disability. This was accomplished and the claim was readjudicated in an August 2015 supplemental statement of the case. For this reason, the Board concludes that that the Board's remand orders have been substantially complied with, and it may proceed with a decision at this time. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002).

The Board notes that in Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans Claims (Court) stated that a claim for a TDIU due to service-connected disability is part and parcel of an increased rating claim when such claim is raised by the record. The evidence of record, to include a March 2010 VA examination, raised the issue of unemployability. In light of the Court's holding in Rice, the Board has considered the TDIU claim as part of his pending increased rating claims and has accordingly listed the raised TDIU claim as an issue.

The issue for entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).
FINDINGS OF FACT

1. For the entire initial rating period on appeal, the Veteran's PTSD has been manifested by occupational and social impairment, with deficiencies in most areas, such as work, family relations, and mood, due to such symptoms as: depressed mood, anxiety, suspiciousness, sleep impairment, disturbance of motivation and mood, difficulty in establishing relationships, and neglect of personal appearance or hygiene.

2. For the entire initial rating period on appeal, the Veteran's PTSD has not been manifested by total occupational and social impairment.


CONCLUSION OF LAW

For the entire initial rating period on appeal, the criteria for a 70 percent rating, but no higher, for PTSD have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 
38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2045). The notice requirements of VCAA require VA to notify the claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 

The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; 
(2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

The Veteran's appeal for a higher initial PTSD rating arises from his disagreement with the initial evaluation following the grant of service connection for PTSD, no additional notice is required. The courts have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App.112 (2007).

Further, the Veteran's service treatment records, VA and private treatment records, an October 2007 and June 2009 psychological evaluations from licensed psychological associates, and the Veteran's statements are associated with the claims file. The Veteran was also afforded VA examinations in connection with his claim in February 2008, March 2009, March 2010, and June 2015. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA opinions and findings obtained in this case are adequate. The examination reports considered all the pertinent evidence of record, the Veteran's statements and symptoms, and discussed the relevant rating criteria.

Significantly, the Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Disability Rating Criteria

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). In Hart v. Mansfield, 21 Vet. App. 505, 511 (2007), the Court extended entitlement to staged ratings to claims for increased disability ratings where "the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings." 

For the initial rating period prior to June 24, 2009, the Veteran is in receipt of a 30 percent PTSD evaluation under Diagnostic Code 9411. A 30 percent rating is assigned when PTSD causes occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment and mild memory loss. 
38 C.F.R. § 4.130 (2015).

Beginning on June 24, 2009, the Veteran is in receipt of a 50 percent disability rating for PTSD. A rating of 50 percent is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 70 percent disability rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships. Id.

A 100 percent disability rating is assigned total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, or for the veteran's own occupation or name. 38 C.F.R. § 4.130, Diagnostic Code 9411.

In applying the above criteria, the Board notes that, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected disability, such signs and symptoms shall be attributed to the service-connected disability. See 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181 (1998), citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996) (the Board is precluded from differentiating between symptomatology attributed to a non-service-connected disability and a service-connected disability in the absence of medical evidence which does so).

In determining the level of impairment under 38 C.F.R. § 4.130, a rating specialist is not restricted to the symptoms provided under the diagnostic code, and should consider all symptoms which affect occupational and social impairment, including those identified in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV or DSM 5). See Mauerhan v. Principi, 16 Vet. App. 436 (2002). If the evidence demonstrates that a claimant suffers symptoms or effects that cause an occupational or social impairment equivalent to those listed in that diagnostic code, the appropriate, equivalent rating is assigned. See Mauerhan, 16 Vet. App. 436.

Within the DSM-IV, Global Assessment Functioning (GAF) scale scores ranging from 1 to 100 reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996). 
GAF scores from 71 to 80 reflect transient symptoms, if present, and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family arguments); resulting in no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind school work). 

GAF scores from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. GAF scores ranging from 51 to 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). 

Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, inability to keep a job). 

GAF scores ranging from 31 to 40 reflect some impairment in reality testing or communication (e.g., speech which is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., a depressed patient who avoids friends, neglects family, and is unable to do work). 

A GAF Score of 21 to 30 denotes behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function is almost all areas (e.g., stays in bed all day; no job, home or friends).

Effective August 4, 2014, VA amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated "DSM-5." As the Veteran's claim was initially certified to the Board in April 2009 (i.e., after August 4, 2014), the DSM-5 is not applicable to this case. However, according to the DSM-5, clinicians do not typically assess GAF scores. The DSM-5 introduction states that it was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. 

In reviewing the evidence of record, the Board will consider the assigned GAF score; however, the Board is cognizant that GAF scores are not, in and of themselves, the dispositive element in rating a disability. Rather, GAF scores must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a) (2015).

PTSD Rating 

The Veteran essentially contends that his PTSD disability is more severe than what is contemplated by the currently assigned disability ratings. 

Upon review of all the evidence of record, the Board finds that, for the entire initial rating period on appeal, the evidence is in equipoise as to whether the Veteran's PTSD has been manifested by occupational and social impairment, with deficiencies in most areas, such as work, family relations, and mood.

The evidence includes an October 2007 psychological evaluation from a licensed psychological associate, L.G. and co-signed by Dr. A.F. It was noted that, after the death of his wife, the Veteran began experiencing numerous PTSD symptoms including, intrusive thoughts, nightmares, avoidance of conversations about his military service, estrangement and detachment from others, hypervigilance, hyperirritability, and an exaggerated startle response. He also reported having sleep problems and nightmares. The Veteran reported having an extensive alarm system and often checking the locks on his doors and windows. Sometimes the Veteran did not leave his house for days. The Veteran reported that he felt uncomfortable in crowds, and was fearful that someone was going to jump out and attack him. He reported feeling distant from people and had difficulty getting close to anyone. Upon mental status examination, the Veteran was noted to be cooperative. Mood was anxious and affect was dysthymic. Judgment and insight were limited. The Veteran denied any current suicidal or homicidal ideation. It was then noted that the Veteran's symptoms had interfered significantly with his personal, social, and professional life. His hypervigilance and hyperarousal were noted to interfere with his productivity at work. Because of his sleep problems, he had difficulty maintaining the levels of memory and concertation necessary to learn new skills. Moreover, because of his hypervigilance, the Veteran was severely compromised in his ability to initiate or sustain work and social relationships. A diagnosis of chronic, severe PTSD was rendered and a GAF score of 40 was assigned, indicative of some impairment in reality testing or communication or major impairment in several areas such as work, family relations, judgment, thinking, or mood. The private licensed psychological associate noted that the Veteran was "permanently and totally disabled and unemployable."

The Veteran was afforded a VA PTSD examination in February 2008. During the evaluation, the Veteran reported that he previously socialized, but now felt isolated when out in public. He reported avoiding large crowds and stated that he was fearful in public. The Veteran also reported sleep impairment due to nightmares. Auditory hallucinations were also noted to occur intermittently. The Veteran stated that he experienced panic attacks approximately once a week. Upon mental status examination, the Veteran's speech was spontaneous and clear. Attitude was cooperative and friendly and affect was appropriate. Mood was euthymic. The Veteran reported some problems remembering things and concentrating on work tasks. The Veteran denied homicidal or suicidal ideation. The examiner also noted that the Veteran was working full-time and occasionally socialized with his siblings. A diagnosis of chronic PTSD was noted with a GAF score of 59, indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.

During a March 2009 VA examination, the Veteran reported that, after the death of his wife, he became more hypervigilant, did not sleep well, and had more nightmares. He also reported having daily intrusive thoughts. The Veteran was also noted to be hypervigilant and uncomfortable in large crowds, short-tempered,
easily startled, and anxious all the time. The Veteran reported being currently employed full-time in sales. Upon mental status examination, the Veteran was alert and cooperative. There were no loose associations or flight of ideas. No bizarre motor movements or tics. His mood was calm and affect was appropriate. He had 
nightmares and intrusive thoughts, but no homicidal or suicidal ideation. There was no impairment of thought processes or communication. There were no delusions, hallucinations, ideas of reference, or suspiciousness. His memory, both remote and
recent, appeared to be adequate. Insight and judgment appeared to be adequate as was intellectual capacity. The examiner diagnosed the Veteran with PTSD and assigned a GAF score of 54, reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning. The examiner further stated that the Veteran had "moderate and persistent symptoms of PTSD" with no remissions. He was working as a manufacturer's representative and was due to retire soon. He was anxious, but not irritable. He was withdrawn and had no friends, although he did attend church twice a month. The Veteran was also noted to have limited interest. The examiner stated that the Veteran's psychiatric symptoms resulted in moderate impairment of employment and social functioning. 

The evidence includes a second psychological evaluation from a Licensed Psychological Associate, L.G., co-signed by Dr. A.F. dated in June 2009. The report noted that the Veteran was initially evaluated in October 2007 and had been treated by L.G. since that time. His most recent follow-up was on June 24, 2009. Current diagnoses revealed chronic and severe PTSD and depressive disorder. A GAF score of 39 was assigned, reflecting serious symptoms or serious occupational or social impairment. It was further noted that the Veteran was having a difficult time not working and a hard time getting out of the house. He also had difficulty with motivation without structure and was struggling with memory and concentration issues. He also had sleep difficulties and more thoughts about his time in Vietnam.

The Veteran was afforded a VA examination in March 2010. During the evaluation, the Veteran reported sleep disturbance with difficulty falling
asleep and with interrupted sleep every night. He reported that he also had nightmares every night. The Veteran further stated that he had daily intrusive thoughts and was anxious about 80 percent of the time. He reported that he was easily startled and was hypervigilant, intolerant of crowds, and was short-tempered.
The Veteran stated that he last worked a year ago. He reported that he was working full-time in sales and plumbing, but gave up because he lost interest. The Veteran reported that he did his own cooking and cleaning. He noted that he did not have any close friends and stated that he sat around the house watching television. 

Upon mental status examination, the March 2010 VA examiner noted that the Veteran was alert and cooperative. There were no loosened associations or flight of ideas. No bizarre motor movements or ticks. His mood was subdued and his affect was appropriate. He had no suicidal or homicidal ideation or intent. He had no
impairment of thought processes or communication. There were no delusions, hallucinations, ideas of reference, or suspiciousness. Insight and judgment
appeared to be adequate as did intellectual capacity. The examiner diagnosed the Veteran with PTSD and assigned a GAF score of 52, indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. The examiner further noted that the Veteran had moderate and persistent symptoms of PTSD. The examiner noted that the Veteran was no longer working and reported being anxious 80 percent of the time. He was also irritable, stayed to himself, had no friends, and did not attend church. In sum, the examiner stated that the Veteran's psychiatric symptoms resulted in "some impairment of employment and social functioning." Because of these symptoms, the examiner opined that any employment, either sedentary or active would be "very problematic." 

Pursuant to the Board's August 2011 remand, the Veteran was afforded another VA examination in June 2015. It was noted that the Veteran lived by himself and stated that he lost interest in relationships. The Veteran reported significant social withdrawal predominately due to anhedonia, but there was increased arousal as well. Last year, the Veteran bought football tickets, but then could not go to the games due to increased arousal. The Veteran reported that he retired in 2010. He also stated that he was not keeping up his house and that his niece would come over and clean up. He did not prepare meals and stated that he used drive-throughs. The examiner noted that the Veteran was capable of performing activities of daily living, but did not perform them routinely. The examiner noted that the Veteran had symptoms of depressed mood, anxiety, suspiciousness, sleep impairment, disturbance of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and neglect of personal appearance or hygiene. The examiner stated that the Veteran's PTSD resulted in occupational and social impairment with reduced reliability and productivity. 

Upon review of all the evidence of record, both lay and medical, the Board finds that, for the entire initial rating on appeal, the Veteran's PTSD disability more nearly approximates a 70 percent disability rating. The Board finds that the Veteran's reported symptoms have remained relatively consistent throughout the appeal period. Although the June 2015 VA examiner specifically indicated that the Veteran's PTSD resulted in occupational and social impairment with reduced reliability and productivity (as contemplated by a 50 percent evaluation), the Board finds that the Veteran's symptoms are more consistent with the criteria for a 70 percent rating. 

Specifically, throughout the rating period on appeal, the Veteran has been shown to be withdrawn and anxious in large crowds. He has consistently been found to be depressed and has lost motivation for activities. The October 2007 private licensed psychological associate noted that the Veteran was "permanently and totally disabled and unemployable." The March 2010 VA examiner also noted that the Veteran's psychiatric symptoms resulted in some impairment of employment and social functioning causing any employment, either sedentary or active to be "very problematic." For these reasons, and resolving reasonable doubt in the Veteran's favor, the Board finds that a 70 percent disability evaluation for PTSD is more nearly approximated for the entire initial rating period on appeal.

The Board further finds that the Veteran's PTSD does not more nearly approximate a 100 percent disability evaluation. Although the October 2007 and March 2010 examiners noted that the Veteran's symptoms may cause employment to be problematic or that the Veteran was unemployable, the evidence does not show that the Veteran is unable to obtain or maintain employment. The evidence shows that the Veteran had remained employed full-time as a manufacturing representative and reported that he retired in 2010. Moreover, during the March 2009 VA examination, the Veteran specifically noted that he felt "better when he works." Further, although the Veteran reported diminished interest and no close friends, he stated that his niece helps him around the house, which suggests to the Board that the Veteran has at least some relationship with a family member. In the March 2009 VA examination, the Veteran reported attending church twice a month. Moreover, the Board finds that the Veteran's PTSD symptoms do not include gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, disorientation to time or place; and memory loss for names of close relatives, or for the veteran's own occupation or name. See 38 C.F.R. § 4.130. 

The June 2015 VA examiner did note that the Veteran was capable of performing activities of daily living, but did not perform them routinely. Although intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), is a symptom contemplated by the 100 percent rating criteria, the vast majority of the Veteran's symptoms more nearly approximate occupational and social impairment, with deficiencies in most areas, such as work, family relations, judgment, thinking, or mood as contemplated under the 70 percent rating criteria.

For example, the evidence shows that the Veteran does suffer from nightmares and sleep impairment, but this is contemplated under sleep impairment listed under the criteria for a 30 percent rating, a lower rating than his currently assigned 70 percent evaluation. Disturbance of motivation and mood (depression), and difficulty in establishing and maintaining relationships are specifically contemplated in the 50 percent and 70 percent rating criteria. The same is true with the Veteran's anxiety which is a symptom contemplated under the 50 percent PTSD disability rating. Further, the competent and probative evidence of record demonstrates that the Veteran's thought process and communication were within normal limits. The Veteran does not suffer from persistent hallucinations and he has been found to be able to perform, to some extent, activities of daily living. 

The Veteran's GAF scores have also been considered. The October 2007 licensed psychiatric associate assigned a GAF score of 40, reflecting some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. In the February 2008 VA examination report, the Veteran was assigned a GAF score of 59 and in the March 2009 VA examination he was assigned a GAF score of 54, indicative of moderate symptoms or moderate impairment in social and occupational functioning. In the June 2009 private psychological evaluation, the Veteran was assigned a GAF score of 39, reflective of major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. In the March 2010 VA examination report, the Veteran was assigned a GAF score of 52, indicative of moderate symptoms or moderate impairment in social and occupational functioning. When taken together, the Board finds that the Veteran's GAF scores throughout the rating period are consistent with the 70 percent PTSD rating assigned herein. 

For these reasons, the Board finds that the evidence of record does not demonstrate total occupational and social impairment. Accordingly, the Board finds that a 70 percent PTSD disability evaluation, but no higher, is warranted for the entire initial rating period on appeal.


Extraschedular Consideration

The Board also has considered whether referral for extraschedular consideration is warranted. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. Second, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the Veteran's disability picture requires the assignment of an extraschedular rating. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's PTSD disability is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. A comparison between the level of severity and symptomatology of the Veteran's symptoms with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's PTSD disability. The Veteran's PTSD symptoms have been manifested by occupational and social impairment, with deficiencies in most areas, such as work, family relations, and mood, due to such symptoms as: depressed mood, anxiety, suspiciousness, sleep impairment, disturbance of motivation and mood, difficulty in establishing and maintain effective work and social relationships, and neglect of personal appearance or hygiene. Therefore, the Board finds that the record does not reflect that the Veteran's PTSD disability is so exceptional or unusual as to warrant referral for consideration of the assignment of a higher rating on an extra-schedular basis. 

In the absence of these factors, the Board finds that the requirements for a referral for consideration of the assignment of an extraschedular evaluation for the Veteran's disability under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Further, according to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria.



ORDER

For the entire initial rating period, the criteria for a 70 percent rating, but no higher, for PTSD is granted.


REMAND

In Bradley v. Peake, the Court, held that, although no additional disability compensation may be paid when a total schedular disability rating is already in effect, a separate award of TDIU predicated on a single disability may form the basis for an award of special monthly compensation. See Bradley v. Peake, 22 Vet. App. 280 (2008) (holding that there could be a situation where a veteran has a schedular total rating for a particular service-connected disability, and could establish a TDIU rating for another service-connected disability in order to qualify for SMC under 38 U.S.C. § 1114(s) by having an "additional" disability of 60 percent or more ("housebound" rate)). 

The Veteran has a currently assigned 100 percent rating for prostate cancer. However, in a September 2015 rating decision, the RO proposed to reduce the Veteran's rating to 20 percent. As this claim is still pending, final adjudication of the issue of entitlement to a TDIU, which is inextricably intertwined, may not occur until the outcome of this proposed reduction is known. As such, remand of this issue is necessary at this time.

Accordingly, the case is REMANDED for the following actions:

1. Following final adjudication of the proposed reduction of the rating assigned to the Veteran's prostate cancer disability, readjudicate the claim for entitlement to a TDIU.

2. If the benefit sought remains denied, the RO should furnish to the Veteran and an appropriate Supplemental Statement of the Case, and should afford him the appropriate time period for response.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
K. J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs